IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff | ) ) ) | |
| v. | ) ) | Civil Action No. |
| COLTEC INDUSTRIES INC. and<br>NATIONAL STEEL AND<br>SHIPBUILDING COMPANY, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency, ("EPA"), files this complaint and alleges as follows:

## NATURE OF ACTION

1.      This is a civil action brought pursuant to Section 213(d) of the Clean Air Act (the "Act"), 42 U.S.C. § 7524(d), and 40 C.F.R. §§ 94.1105 and 1106 for the assessment of civil penalties and injunctive relief against Coltec Industries Inc. and National Steel and Shipbuilding Company ("NASSCO") for violations of the Act.

2.      The violations alleged herein arise from Coltec Industries' manufacture and sale of Category 3 marine compression-ignition ("CI") engines in 2004 through 2008 and NASSCO's installation of Category 3 and Category 1 marine CI engines in marine vessels in or about 2004 through 2009, in violation of Section 213 of the Act, 42 U.S.C. § 7547, and the regulations promulgated thereunder and codified at 40 C.F.R. Part 94 (the "Marine CI Engine Rules").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of, and the parties to, this

action pursuant to 40 C.F.R. §§ 94.1105(a) and 94.1106(b)(1) and 28 U.S.C. §§ 1331, 1345, and

1355.

4.      Venue is proper in this jurisdiction pursuant to 40 C.F.R. § 94.1106(b)(1),

because the Administrator has her principal place of business here.

## DEFENDANTS

5.      Defendant Coltec Industries Inc. (referred to herein as "FME" after Fairbanks

Morse Engine, the Coltec division involved) is incorporated under the laws of the State of

Pennsylvania.  FME is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C.

§ 7602(e).  FME is a "manufacturer" as defined in Section 216(1) of the Act, 42 U.S.C.

§ 7550(1) and 40 C.F.R. § 94.2, of new marine CI engines in the United States.

6.      Defendant NASSCO is incorporated under the laws of the State of Nevada.

Defendant NASSCO is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C.

§ 7602(e).  At all times relevant hereto, NASSCO was a manufacturer of "new vessels" within

the meaning of 40 C.F.R. § 94.2.

## STATUTORY AND REGULATORY BACKGROUND

7.      This action arises under Title II of the Act, as amended, 42 U.S.C. §§ 7521-7590,

and the Marine CI Engine Rules.

A.      **Regulatory Requirements**

8.      Section 213(a)(1) of the Act, 42 U.S.C. § 7547(a)(1), directed EPA to conduct a

study of emissions from nonroad engines and nonroad vehicles, including marine engines, to

determine whether they cause or significantly contribute to air pollution which may reasonably

be anticipated to endanger public health or welfare. EPA's study concluded that emissions of

oxides of nitrogen, volatile organic compounds, including hydrocarbons, and carbon monoxide

from nonroad engines and equipment contribute significantly to ozone and carbon monixide

concentrations in more than one nonattainment area. 59 Fed. Reg. 31306 (June 17, 1994).

9.      Pursuant to Section 213(a)(3) of the Act, EPA adopted initial Tier 1 emission

standards for certain model year 2004 and later Category 1 engines. 64 Fed. Reg. 73331

(December 29, 1999). Category 1 engines have a rated power greater than or equal to 37

kilowatts ("kW") and a specific engine displacement of less than 5.0 liters per cylinder ("l/cyl.")

*Id.* at 9758. The Tier 1 Category 1 emission standards became effective on January 1, 2004. *Id.*

In 2003, EPA further provided that previously adopted, and more stringent, Tier 2 emission

standards for Category 1 engines would become effective in 2007. *Id.* at 9750-51.

10.     EPA also adopted Tier 1 emission standards for Category 3 marine CI engines.

*Id.* Category 3 engines have a specific engine displacement greater than or equal to 30 l/cyl. *Id.*

These engines are typically used for propulsion in large ocean-going vessels such as container

ships, tankers, bulk carriers, and cruise ships. The Tier 1 Category 3 emission standards became

effective on January 1, 2004. *Id.*

11.     The Marine CI Engine Rules require an engine manufacturer to obtain a

certificate of conformity for each "engine family" it plans to manufacture and sell in a given

"model year." 40 C.F.R. § 94.201. "Engine family" means engines that are expected to have

similar emission characteristics. 40 C.F.R. §§ 94.2 and 94.204. "Model year" means the

manufacturer's new model production period, which can last from January 2 of the prior year

-3-

through December 31, of the model year itself. 40 C.F.R. § 94.2. The manufacturer must demonstrate to EPA in the application for the certificate of conformity that its engines meet the applicable standards and all other requirements set forth in 40 C.F.R. Part 94. 40 C.F.R. § 94.6(c). To do this, manufacturers must test the highest emitting configuration within the engine family using EPA prescribed test procedures (40 C.F.R. Part 94, Subpart B – Test Procedures) and submit the test results, together with other specified information, to EPA. 40 C.F.R. Part 94, Subpart C – Certification Provisions.

12.     The Marine CI Engine Rules, 40 C.F.R. § 94.212, require that each marine CI engine covered by a certificate of conformity must be labeled by the manufacturer at the point of original manufacture. The label must be affixed so that it cannot be removed without destroying or defacing it and must be attached to an engine part that cannot easily be removed. *Id.* Among other things, the label must contain the full corporate name and trademark of the manufacturer, the model year, the per cylinder displacement of the engine, the engine family and configuration, a prominent and unconditional statement of compliance with EPA's regulations applicable to marine CI engines, and the standards to which the engine was certified. *Id.*

### B. Compliance and Enforcement Provisions

13.     The Marine CI Engine Rules, 40 C.F.R. § 94.1103(a)(1)(i)(A), prohibit a manufacturer of new engines from distributing into commerce, selling, offering for sale, or introducing into commerce a new marine CI engine manufactured after the effective dates of the regulations, unless such engine is covered by an EPA certificate of conformity or is exempt from complying with the Clean Air Act and the applicable regulations. The Marine CI Engine Rules, 40 C.F.R. § 94.1103(a)(1)(i)(B), further prohibit the manufacture of an engine for the purposes

of an act listed in 40 C.F.R. § 94.1103(a)(1)(i)(A), unless the engine is covered by a certificate of

conformity issued (and in effect) under 40 C.F.R. Part 94 prior to the engine's introduction into

commerce.

14.     The Marine CI Engine Rules, 40 C.F.R. § 94.1103(a)(4)(ii), prohibit a

manufacturer of new engines subject to federal emission standards from selling, offering for sale,

introducing into commerce, or delivering for introduction into commerce, a new marine CI

engine unless the manufacturer affixes a label or tag in accordance with 40 C.F.R. § 94.212.

Each missing of nonconforming label is a separate offense.  40 C.F.R. § 94.1106(a)(3).

15.     The Marine CI Engine Rules apply to manufacturers of new marine vessels as

well engine manufacturers.  Specifically, 40 C.F.R. § 94.1103(a)(5) prohibits a manufacturer of

marine vessels from distributing into commerce, selling, offering for sale, or delivering for

introduction into commerce a new vessel containing an engine not covered by a certificate of

conformity applicable for an engine model year the same as or later than the calendar year in

which the manufacture of the new vessel is initiated.  For the purpose of this prohibition, the

manufacture of a vessel is initiated when the keel is laid, or the vessel is at a similar stage of

construction.  *Id.*  Each uncertified engine in the vessel is a separate offense.  40 C.F.R.

§ 94.1103(a)(3).

16.     Section 213(d) of the Act, 42 U.S.C. § 7547(d), provides that the emission

standards applicable to nonroad engines and vehicles, including marine engines (see Sections

216(10) and (11) of the Act, 42 U.S.C. § 7550(10) and (11)) shall be enforced in the same

manner as standards prescribed under Section 202 of the Act, 42 U.S.C. § 7521.  Pursuant to this

authority, the Marine CI Engine Rules, 40 C.F.R. §§ 94.1105(a) and 94.1106(a), provide

jurisdiction in the district courts of the United States to restrain violations of 40 C.F.R.

§94.1103(a) and establish that a violation of the prohibitions in 40 C.F.R. § 1103(a) is a violation

of the applicable provisions of the Act, including Sections 203 and 213(d).  A violation of the

Act is subject to the penalty provisions thereunder.

17.     The Marine CI Engine Rules, 40 C.F.R. § 94.1106(a)(1), provide that any

violation of 40 C.F.R. § 94.1103(a)(1), (a)(4), (a)(5), or (a)(6) shall be subject to a penalty of up

to $32,500 for each violation.  Pursuant to the Federal Civil Penalties Inflation Adjustment Act

of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, 40 C.F.R. § 19.4, and 74 Fed. Reg.

626 (January 7, 2009), the maximum penalty for violations occurring after January 12, 2009,

increased to $37,500 per violation.

## GENERAL ALLEGATIONS

18.     From in or about July 2004 through June 2008, FME manufactured thirty-two

model FM-MAN 48/60 Category 3 marine CI engines that it sold to NASSCO.

19.     The thirty-two model FM-MAN 48/60 engines described in Paragraph 18 above

were not covered by certificates of conformity issued by EPA.

20.     NASSCO installed the thirty-two FM-MAN 48/60 Category 3 marine CI engines

described in Paragraphs 18 and19 above (four per ship) as the main diesel generators on the

following United States Navy T-AKE class vessels: USNS Lewis & Clark (T-AKE 1),

Sacagawea (T-AKE 2), Alan Shepard (T-AKE 3), Richard E. Byrd (T-AKE 4), Robert E. Peary

(T-AKE 5), Amelia Earhart (T-AKE 6), Carl Brashear (T-AKE 7), and Walter Schirra (T-AKE

8).  Construction of these T-AKE vessels was initiated on or about the following dates, which are

after the implementation date of applicable Category 3 emission standards:  USNS Lewis &

Clark, April 22, 2004; USNS Sacagawea, June 7, 2005; USNS Alan Shepard, January 30, 2006; USNS Richard E. Byrd, July 17, 2006; USNS Robert E. Peary, December 11, 2006; USNS Amelia Earhart, May 25, 2007; USNS Carl Brashear, November 2, 2007; USNS Wally Schirra, April 14, 2008. Each vessel was delivered to the United States Navy.

21.     On October 21, 2008, FME obtained a 2008 model year certificate of conformity for its engine family 8FBMM108.COC covering its FM-MAN 48/60 model engines. FME subsequently obtained from EPA a 2009 model year certificate for the engine family 9FBMN108.COC for the same model of engines. In 2008 and 2009, FME manufactured and sold to NASSCO eight EPA certified model FM-MAN 48/60 engines for installation in two additional Navy T-AKE class vessels, the Mathew Perry (T-AKE 9) and the Charles Drew (T-AKE 10). The labels affixed to these engines pursuant to 40 C.F.R. § 94.212 are defective, however, because they omit the name of the engine family and the standards to which the engines are certified.

22.     On or about July 8, 2004, NASSCO commenced construction of a product (*i.e.*, oil) tanker designated the "BP Alaskan Adventurer" for BP p.l.c. NASSCO installed four model year 2003 MAN B&W Diesel A.G. ("MAN") model 6L 48/50 Category 3 marine CI engines in this vessel. It was delivered to BP p.l.c. in or about 2005, after the implementation date of applicable Tier 1 Category 3 emission standards. The four MAN 6L 48/50 model Category 3 marine CI engines were not covered by certificates of conformity issued by EPA.

23.     In or about 2005, NASSCO installed a Category 1 emergency generator engine manufactured by Caterpillar Inc. in the Sacagawea TAKE-2 vessel. The engine was a model year 2003 engine and not covered by an EPA-issued certificate of conformity. Construction of

-7-

the ship started in June 2005, after the effective date of the Tier 2 standards for Category 1

engines and thus did not comply with the Marine CI Engine Rules.  As noted above, the

Sacagawea was delivered to the U.S. Navy.  Subject to a reasonable opportunity for further

investigation and discovery, the Caterpillar engine does not comply with applicable emissions

standards, resulting in the emission of excess pollutants.

24.     On or about December 10, 2007, NASSCO commenced building a product tanker

designated the "Golden State" for U.S. Shipping Partners L.P.  NASSCO equipped the Golden

State with a Cummins model 6CT8.3-DM Category 1 emergency generator engine that was not

covered by an EPA-issued certificate of conformity.  The Golden State was delivered to U.S.

Shipping Partners in or about January 2009.  Subject to a reasonable opportunity for further

investigation and discovery, the Cummins engine does not comply with applicable emissions

standards, resulting in the emission of excess pollutants.

## CLAIMS FOR RELIEF

### Count I

### FME -- 40 C.F.R. § 94.1103(a)(1)(i)(A) and (B): Manufacturing and Selling Marine CI Engines Not Covered by Certificates of Conformity

25.     The United States re-alleges paragraphs 1 through 24 above as if fully set forth

herein.

26.     In or about 2004 through 2008, FME manufactured sold, offered for sale,

introduced or delivered for introduction into commerce thirty-two model FM-MAN 48/60

Category 3 marine CI engines not covered by EPA-issued certificates of conformity.

27.     Each Category 3 marine CI engine manufactured, sold, offered for sale, introduced or delivered for introduction into commerce that was not covered by an EPA-issued certificate of conformity is a separate violation of 40 C.F.R. § 94.1103(a)(1)(i)(A) and (B), subjecting FME to penalties of up to $32,500 per violation occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per engine for violations occurring after January 12, 2009.

## Count II

### *FME -- 40 C.F.R. § 94.1103(a)(4)(ii): Selling Marine CI Engines Without Affixing Compliant Emissions Information Labels or Tags*

28.     The United States re-alleges paragraphs 1 through 24 above as if fully set forth herein.

29.     FME sold to NASSCO thirty-two model year 2004 through or 2008 model FM-MAN 48/60 Category 3 engines without affixing an emissions information label or tag to each engine as required by 40 C.F.R. § 94.212.

30.     Each sale, offer for sale, or introduction or delivery for introduction into commerce of a new marine CI engine by FME without an emissions information label or tag as required by 40 C.F.R. § 94.212 is a separate violation of 40 C.F.R. § 94.1103(a)(4)(ii), and subjects FME to penalties of up to $32,500 per engine for violations occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per engine for violations occurring after January 12, 2009.

31.     FME sold to NASSCO eight model 2008 through 2009 model FM-MAN 48/60 Category 3 engines without affixing an emissions information label or tag to each engine that

complied with 40 C.F.R. § 94.212. Moreover, the emissions information label that FME affixed to the eight engines did not specify the engine family and the standards to which the engines were certified as required by 40 C.F.R. § 94.212(b)(5) and (8), respectively.

32.     Each sale, offer for sale, or introduction or delivery for introduction into commerce of a new marine CI engine by FME without an emissions information label or tag that complies with 40 C.F.R. § 94.212 is a separate violation of 40 C.F.R. § 94.1103(a)(4)(ii), and subjects FME to penalties of up to $32,500 per engine for violations occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per engine for violations occurring after January 12, 2009.

## Count III

### *NASSCO -- 40 C.F.R. § 94.1103(a)(5): Selling New Vessels Containing Marine CI Engines Not Covered by Certificates of Conformity*

33.     The United States re-alleges paragraphs 1 through 24 above as if fully set forth herein.

34.     In or about 2004 through 2009, NASSCO distributed in commerce, sold, offered for sale, or delivered for introduction into commerce eight new Navy T-AKE Class vessels containing thirty-two model FM-MAN 48/60 Category 3 marine CI engines not covered by EPA certificates of conformity.

35.     In or about 2005, NASSCO distributed in commerce, sold, offered for sale, or delivered for introduction into commerce the BP Alaskan Adventurer, a new product tanker, containing four MAN model 6L 48/50 Category 3 marine CI engines not covered by EPA certificates of conformity.

36.     In or about 2006, after the effective date of the applicable Tier 1 standards under the Marine CI Engine Rules, NASSCO distributed in commerce, sold, offered for sale, or delivered for introduction into commerce the USNS Sacagawea containing a Caterpillar Category 1 engine not covered by an EPA-issued certificate of conformity or certified to the Tier 1 standards.

37.     In or about 2007, NASSCO distributed in commerce, sold, offered for sale, or delivered for introduction into commerce the Golden State product tanker equipped with an uncertified Cummins engine.

38.     Each distribution in commerce, sale, offering for sale, or delivery for introduction into commerce of a new vessel containing a marine CI engine not covered by an EPA certificate of conformity applicable for the engine model year the same as or later than the calendar year in which the manufacture of the vessel is initiated is a separate violation of 40 C.F.R. § 94.1103(a)(5), subjecting Defendant NASSCO to penalties of up to $32,500 per engine for violations occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per engine for violations occurring after January 12, 2009.

## PRAYER FOR RELIEF

Wherefore, the United States respectfully demands judgment:

a.     Permanently enjoining FME from manufacturing selling, offering for sale, introducing, or offering for introduction, into commerce any marine CI engine not covered by a certificate of conformity issued by EPA in accordance with the Act and the Marine CI Engine Rules, or any marine CI engine that lacks an affixed label conforming in all respects to the requirements of the Act and the Marine CI Engine Rules;

-11-

b.      With respect to each marine CI engine manufactured, sold, offered for sale, introduced, or delivered for introduction, into commerce, or distributed into commerce in violation of 40 C.F.R. § 94.1103(a)(1)(i)(A) and (B), as alleged above, assessing civil penalties against FME of $32,500 per engine for violations between March 15, 2004 and January 12, 2009, and up to $37,500 per engine for violations after January 12, 2009.

c.      With respect to each marine CI engine sold without affixing an emission information label or tag, or a conforming emissions label or tag, as required by 40 C.F.R. § 94.212, in violation of 40 C.F.R. § 94.1103(a)(4)(ii), as alleged above, assessing civil penalties against FME of up to $32,500 per engine for violations between March 15, 2004 and January 12, 2009, and up to $37,500 per engine for violations after January 12, 2009.

d.      Permanently enjoining NASSCO from distributing in commerce, selling, offering for sale, or delivering for introduction into commerce any new vessel containing a marine CI engine not covered by an EPA certificate of conformity issued in accordance with the Act and the Marine CI Engine Rules;

e.      With respect to each distribution in commerce, sale, offering for sale, or delivery for introduction into commerce of a new vessel containing a marine CI engine not covered by an EPA-issued certificate of conformity applicable for the engine model year the same as or later than the calendar year in which the manufacture of the vessel is initiated in violation of 40 C.F.R. § 94.1103(a)(5), as alleged above, assessing civil penalties against Defendant NASSCO of up to $32,500 per engine for violations occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per engine for violations occurring after January 12, 2009.

f.     Ordering Defendants to take appropriate action, to remedy the violations of the

Act and the Marine CI Engine Rules alleged above, including taking steps to mitigate excess

emissions that have occurred from engines that do not meet applicable emission standards;

g.     Awarding the United States its costs and disbursements in this action; and

h.     Granting such other and further relief as the Court deems just and proper.

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

THOMAS P. CARROLL (D.C. Bar No. 388593)
ROBYN E. HANSON (N.Y. Bar No. 462339)
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-4051

OF COUNSEL:
JOCELYN ADAIR
Attorney/Adviser
Air Enforcement Division
Office of Enforcement
Ariel Rios Building
1200 Pennsylvania Avenue, N. W.
Mail Code: 2242A
Washington, DC 20460