IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:10-cv-01659-ABJ |
| | ) | |
| COLTEC INDUSTRIES INC. and | ) | |
| NATIONAL STEEL AND | ) | |
| SHIPBUILDING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**<u>CONSENT DECREE</u>**

**FILED**

**MAY 2 3 2012**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ...............................................................................2

II.     APPLICABILITY ...................................................................................................3

III.    DEFINITIONS........................................................................................................3

IV.     CIVIL PENALTY ...................................................................................................6

V.      COMPLIANCE REQUIREMENTS .......................................................................7

VI.     SUPPLEMENTAL ENVIRONMENTAL PROJECT ..........................................11

VII.    CLAIMS RESOLUTION COSTS ARE UNALLOWABLE COSTS IN
        GOVERNMENTCONTRACTS.............................................................................15

VIII.   REPORTING REQUIREMENTS .........................................................................16

IX.     STIPULATED PENALTIES .................................................................................18

X.      FORCE MAJEURE ...............................................................................................22

XI.     DISPUTE RESOLUTION .....................................................................................24

XII.    INFORMATION COLLECTION AND RETENTION .........................................26

XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS...............................28

XIV.    COSTS ...................................................................................................................29

XV.     NOTICES...............................................................................................................30

XVI.    EFFECTIVE DATE...............................................................................................31

XVII.   RETENTION OF JURISDICTION .......................................................................32

XVIII.  MODIFICATION ..................................................................................................32

XIX.    TERMINATION....................................................................................................32

XX.     PUBLIC PARTICIPATION ..................................................................................33

XXI.    SIGNATORIES/SERVICE....................................................................................34

XXII.   INTEGRATION ....................................................................................................34

XXIII.  FINAL JUDGMENT .............................................................................................34

XXIV.   APPENDICES .......................................................................................................35

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action on September 30, 2010, alleging that Defendants Coltec Industries, Inc. (referred to herein as "FME" after Fairbanks Morse Engine Division, the Coltec division involved) and National Steel and Shipbuilding Company ("NASSCO") (collectively referred to herein as "Defendants") violated Section 213 of the Clean Air Act, as amended ("CAA" or "Act"), 42 U.S.C. § 7547, and EPA regulations promulgated thereunder that are applicable to marine compression-ignition ("CI") engines and codified at 40 C.F.R. Part 94 (the "Marine CI Engine Rules"), pertaining to emissions certification and labeling requirements for new marine engines and new marine vessels.

WHEREAS, regarding Defendant FME, the Complaint alleges that from July 2004 to June 2008, FME manufactured and sold to NASSCO thirty-two model FM-MAN 48/60 Category 3 marine CI engines that were not covered by EPA-issued certificates of conformity and that did not have affixed to each engine the requisite emissions information labels or tags, in violation of Section 213 of the Act, 42 U.S.C. § 7547, and the Marine CI Engine Rules. Additionally, the Complaint alleges that FME manufactured and sold to NASSCO eight additional model year 2008 and 2009 FM-MAN 48/60 engines that, though covered by certificates of conformity, bore noncompliant emissions information labels, also in violation of Section 213 of the Act, 42 U.S.C. § 7547, and the Marine CI Engine Rules.

WHEREAS, regarding Defendant NASSCO, the Complaint alleges that NASSCO purchased from FME thirty-two model FM-MAN 48/60 Category 3 marine CI engines that were not covered by EPA-issued certificates of conformity and that were not labeled with the requisite information labels or tags, subsequently using these engines to manufacture eight T-AKE class

1

vessels that NASSCO sold to the United States Navy ("U.S. Navy"), in violation of Section 213 of the Act, 42 U.S.C. § 7547, and the Marine CI Engine Rules. The Complaint also alleges the following additional violations of Section 213 of the Act, 42 U.S.C. § 7547, and the Marine CI Engine Rules: that NASSCO manufactured and sold to BP p.l.c. a new marine vessel using four model 6L 48/50 marine CI engines manufactured by MAN B&W Diesel A.G., a German company, that likewise were not covered by EPA-issued certificates of conformity; that NASSCO manufactured and sold to the U.S. Navy one of the T-AKE vessels using an emergency generator engine manufactured by Caterpillar Inc. that was certified using outdated and incorrect emissions standards; and that NASSCO manufactured and sold to U.S. Shipping Partners, L.P. a new marine vessel using an emergency generator engine manufactured by Cummins, Inc. that was not covered by an EPA-issued certificate of conformity.

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section 1, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of, and the parties to, this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 213 of the Act, 42 U.S.C. § 7547, and the regulations promulgated thereunder at 40 C.F.R. §§ 94.1105(a) and

94.1106(b)(1). Venue lies in this District pursuant to 40 C.F.R. § 94.1106(b)(1) because this District is the location of "the Administrator's principal place of business." For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and agree that venue in this District is proper.

2.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section 213 of the Clean Air Act, 42 U.S.C. § 7547, and the Marine CI Engine Rules at 40 C.F.R. Part 94.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendants and each Defendant's successors, assigns, or other entities or persons otherwise bound by law.

4.      Defendants shall each provide a copy of this Consent Decree to their respective officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor(s) retained to perform work required under this Consent Decree. Each Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

6.      Unless specifically defined in this Section or elsewhere in this Consent Decree, terms used in this Consent Decree shall have the meanings currently set forth in Sections 202,

3

216 and 302 of the Act, 42 U.S.C. §§ 7521, 7550, and 7602, and the regulations promulgated under Title II of the Act, 42 U.S.C. §§ 7521–7590.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

 a. "Act" means the Clean Air Act, as amended, 42 U.S.C. §§ 7401 *et seq.*;

 b. "Beloit Facility" means Defendant FME's engine manufacturing facility located at 701 White Avenue in Beloit, Wisconsin;

 c. "Certificate of Conformity" means a certificate issued by EPA, pursuant to Section 206 of the Act, 42 U.S.C. § 7525, and 40 C.F.R. § 94.208, that confirms an Engine Family meets all requirements of the Act for a specific Model Year, as those terms are defined in 40 C.F.R. § 94.2;

 d. "Complaint" means the complaint filed by the United States in this action;

 e. "Consent Decree" or "Decree" means this Decree, including all appendices attached hereto;

 f. "Claims Resolution Costs" means any and all penalties paid by Defendants pursuant to Section IV (Civil Penalty) and Section IX (Stipulated Penalties) of this Consent Decree together with the SEP costs expended by Defendants pursuant to Section VI (Supplemental Environmental Project) of this Consent Decree and any of Defendants' attorneys fees;

 g. "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

 h. "Defendants" means FME and NASSCO;

4

i.   "Effective date" has the definition provided in Section XVI (Effective Date);

j.   "EPA" means the United States Environmental Protection Agency and any of its
successor departments or agencies;

k.   "Federal Contract" means any prime contract, subcontract, or other agreement
transferring value directly or indirectly between Defendants (and their
predecessors, successors, assigns, subsidiaries, parent companies, affiliates,
designees, and all related entities) and a department, agency, or instrumentality of
the United States Government, including but not limited to, contracts for goods or
services, grants, and cooperative agreements, regardless of whether the Defendant
is a prime contractor or subcontractor;

l.   "FME" means Defendant Coltec Industries, Inc.;

m.   "FME's Beloit Facility Operating Permit" means FME's Air Pollution Control
Operation Permit, permit number 154002970-P10, issued by the Wisconsin
Department Of Natural Resources and applicable to the Beloit Facility, which was
issued on May 13, 2005, and retains its status as an "active" permit by way of
FME's timely and complete application for renewal of the permit prior to its
stated May 13, 2010 expiration date;

n.   "Interest" means interest at the rate allowed on money judgments pursuant to 28
U.S.C. § 1961. For the purposes of calculating interest under Paragraph 7 of this
Consent Decree, interest shall begin to accrue on the date this Consent Decree is
lodged with the Court, and such date shall be viewed as the "date of the entry of
judgment" under 28 U.S.C. § 1961(a). For the purposes of calculating interest
owed under Paragraphs 38 and 40 of this Consent Decree, interest shall begin to

accrue on the date that EPA sends a demand for payment of stipulated penalties under Paragraph 36 of the Consent Decree and such date shall be viewed as the "date of entry of judgment" under 28 U.S.C. § 1961(a);

o. "Marine CI Engine Rules" means the regulations promulgated under Section 213 of the Clean Air Act, 42 U.S.C. § 7547, that are applicable to marine compression-ignition engines and codified at 40 C.F.R. Part 94;

p. "NASSCO" means Defendant National Steel and Shipbuilding Company;

q. "$NO_x$" shall mean oxides of nitrogen;

r. "Paragraph" means a portion of this Decree identified by an Arabic numeral;

s. "Parties" means the United States and Defendants;

t. "SCR" or "Selective Catalytic Reduction" shall mean an emissions control system for $NO_x$ that converts $NO_x$ to Nitrogen and water using a reducing agent (typically urea) within a catalyst system;

u. "Section" means a portion of this Decree identified by a roman numeral;

v. "United States" means the United States of America, acting on behalf of EPA;

w. "United States Government" means, without limitation, any department, agency, or instrumentality of the federal government of the United States of America.

x. "U.S. Navy" means the United States Navy.

## IV. CIVIL PENALTY

7.      Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $280,000 as a civil penalty, together with Interest as of the date of lodging.

8.      Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided

to Defendants, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Columbia. At the time of payment, each Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to this Consent Decree in <u>United States v. Coltec Industries, Inc., et al.</u>, and shall reference the civil action number, 1:10-cv-01659-ABJ, and DOJ case number, 90-5-2-1-09942, to the United States in accordance with Section XV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

9. Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating their respective federal income taxes.

10. The penalties paid pursuant to this Section and Section IX (Stipulated Penalties) are unallowable costs pursuant to 48 C.F.R. § 31.205-47 and related provisions for purposes of Federal Contracts.

## V. COMPLIANCE REQUIREMENTS

11. It is the express purpose of the Parties in entering into this Consent Decree to further the goals of the CAA. Defendant FME shall conduct its new marine engine manufacturing operations in compliance with the engine certification and labeling provisions of the Marine CI Engine Rules, absent a valid exclusion or exemption from any such requirements pursuant to 40 C.F.R. Part 94 Subpart J, and Defendant NASSCO shall conduct its new marine vessel manufacturing operations using marine engines that are properly certified and labeled as

7

required by the Marine CI Engine Rules, absent a valid exclusion or exemption from any such requirements pursuant to 40 C.F.R. Part 94 Subpart J.

      12.   <u>Engine Labeling</u>.

          a.   Regarding the thirty-two model FM-MAN 48/60 Category 3 marine CI engines at issue in the Complaint and listed in Table 1 in this subparagraph, which FME manufactured and sold to NASSCO, Defendants shall, upon signing of this Decree, treat such engines as if they were certified and subject to 40 C.F.R. Part 94. Defendant NASSCO shall comply with the maintenance, repair, adjustment, and recordkeeping requirements applicable to vessel manufacturers, owners, and operators at 40 C.F.R. § 94.1004. Defendant FME shall comply with the recordkeeping provisions of 40 C.F.R. § 94.215, the emission-related defect reporting requirements and voluntary emission recall program components of 40 C.F.R. § 94.401 – 94.408, the recall regulations at 40 C.F.R. § 94.701 – 94.703, the warranty requirements imposed by 40 C.F.R. § 94.1107, and the in-use compliance provisions of 40 C.F.R. § 94.1108. Pursuant to the procedures and time period set forth in subparagraph c, below, Defendants shall apply to each such engine a label complying with the information contained in and the format of Appendix A, attached hereto, in the manner otherwise required at the point of original manufacture as set forth in 40 C.F.R. § 94.212(b).

| Table 1: Thirty-Two Uncertified FME Engines | | | |
|---|---|---|---|
| **Engine Manufacturer** | **Engine Model #** | **Engine Serial #** | **Model Year** |
| FME | FM-MAN B&W 48/60 | M04-939863R8L1 | 2004 |
| | | M04-939863R9L1 | 2004 |
| | | M04-939863R9L2 | 2004 |
| | | M04-939863R8L2 | 2004 |
| | | M04-939870R8L1 | 2005 |
| | | M04-939870R9L1 | 2005 |
| | | M04-939870R9L2 | 2005 |
| | | M04-939870R8L2 | 2005 |
| | | M04-939872R8L1 | 2005 |

| | | M04-939872R9L1 | 2005 |
|---|---|---|---|
| | | M04-939872R9L2 | 2005 |
| | | M04-939872R8L2 | 2005 |
| | | M04-939874R8L1 | 2006 |
| | | M04-939874R9L1 | 2006 |
| | | M04-939874R9L2 | 2006 |
| | | M04-939874R8L2 | 2006 |
| | | M04-939876R8L1 | 2006 |
| | | M04-939876R9L1 | 2007 |
| | | M04-939876R9L2 | 2007 |
| | | M04-939876R8L2 | 2007 |
| | | M04-939877R8L1 | 2007 |
| | | M04-939877R9L1 | 2007 |
| | | M04-939877R9L2 | 2007 |
| | | M04-939877R8L2 | 2007 |
| | | M04-939881R8L1 | 2007 |
| | | M04-939881R9L1 | 2007 |
| | | M04-939881R9L2 | 2008 |
| | | M04-939881R8L2 | 2007 |
| | | M04-939882R8L1 | 2008 |
| | | M04-939882R9L1 | 2008 |
| | | M04-939882R8L2 | 2008 |
| | | M04-939882R9L2 | 2008 |

b.      Regarding the eight additional model FM-MAN 48/60 Category 3 marine CI engines at issue in the Complaint and listed in Table 2 in this subparagraph, which FME manufactured and sold to NASSCO, Defendants shall replace the labels currently affixed to such engines with a label complying with the information contained in and the format of Appendix B, attached hereto, in the manner otherwise required at the point of original manufacture as set forth in 40 C.F.R. § 94.212(b).  Defendants shall replace such labels pursuant to the procedures and timing set forth in subparagraph c, below.

| Table 2: Eight Additional FME Engines | | | |
|---|---|---|---|
| **Engine Manufacturer** | **Engine Model #** | **Engine Serial #** | **Model Year** |
| FME | FM-MAN B&W 48/60 | M04-939893R8L1 | 2008 |
| | | M04-939893R9L1 | 2008 |
| | | M04-939893R9L2 | 2008 |

9

| | | M04-939893R8L2 | 2008 |
|---|---|---|---|
| | | M04-939896R8L1 | 2009 |
| | | M04-939896R9L1 | 2009 |
| | | M04-939896R9L2 | 2009 |
| | | M04-939896R8L2 | 2009 |

     c.     The engines listed in Tables 1 and 2 of this Paragraph are installed in a series of T-AKE class vessels owned by the U.S. Navy. Defendants shall apply the requisite label to each engine listed in Table 1 or 2 of this Paragraph within 18 months after the Effective Date of this Decree by following the procedures set forth in this subparagraph and subject to the U.S. Navy making these ships and engines available to Defendants within that time frame. If the U.S. Navy does not make these ships and engines available to Defendants within the 18 month time frame set forth in this subparagraph either at any port when and where Defendants are otherwise contracted by the U.S. Navy to perform work or other maintenance on these engines or T-AKE vessels, or, alternatively, at any time within the U.S. Navy's discretion in San Diego, California, or Norfolk, Virginia, regardless of Defendants' other obligations, Defendants may claim such as a force majeure event in accordance with Section X (Force Majeure) of this Decree.

     i.     Within 30 Days after the Effective Date of this Consent Decree, Defendants shall submit to United States via electronic transmission, as provided in Section XV (Notices), a letter to the attention of the U.S. Navy that references this Consent Decree, by civil action number, 1:10-cv-01659-ABJ, and DOJ case number, 90-5-2-1-09942, and that states Defendants' obligation to apply labels to these engines. In this letter Defendants shall request permission to gain access to each of the T-AKE vessels containing any engines listed in Table 1 or 2 of this Paragraph to allow Defendants to apply the labels required under this Decree. The request shall specify the contact information that the United States, on behalf of the U.S.

10

Navy, should use in responding to the request by oral correspondence or electronic transmission; if no contact information is provided, the United States will respond to Defendants via electronic transmission as provided in Section XV (Notices). Defendants shall request that the United States respond to this request within 30 Days in order to establish a procedure for notification and scheduling availability of these T-AKE vessels for engine labeling at one or more of the labeling locations provided for under this Paragraph.

     ii.   The U.S. Navy has exclusive discretion to determine the dates when and locations where a T-AKE vessel containing an engine listed in Table 1 or 2 of this Paragraph could be made available for labeling. The U.S. Navy will work with Defendants to establish a mutually agreeable schedule and procedure for Defendants to perform the requisite labeling of these engines as specified under this subparagraph; in any event, provided the U.S. Navy makes the subject engines available to Defendants within the 18 month time frame and at one or more of the locations provided for under this subparagraph, Defendants shall perform the requisite labeling of each of the engines in Tables 1 and 2 on the T-AKE vessels within the schedule established by this Paragraph.

     iii.   Defendants shall report the status of the engine labeling efforts to EPA as required under Paragraph 25 of this Consent Decree.

VI. <u>SUPPLEMENTAL ENVIRONMENTAL PROJECT</u>

  13.  Defendants shall implement a Supplemental Environmental Project ("SEP"), the Colt-Pielstick PA6B Marine Diesel Engine Test Stand SCR Project, in accordance with all provisions of Appendix C of this Consent Decree. The SEP shall be completed in phases in accordance with and pursuant to the schedule set forth in Appendix C. The SEP shall reduce $NO_x$ emissions, at a rate of at least 85% emissions reduction, as demonstrated by the procedure

11

described in Appendix C, Paragraph 11.b.vi, by installing add-on air pollution controls, including SCR, to the exhaust stack identified as S21F at process P20/21 (OP Building) under Wisconsin Department of Natural Resources permit number 154002970-P10 and connected to one test stand at FME's Beloit Facility (the "Engine Test Stand"). The Engine Test Stand is used for the testing of Colt-Pielstick PA6B marine diesel engines ("PA6B Engines") manufactured and sold for use in U.S. Navy ships. The SEP is intended to yield environmental and public health benefits.

14.     Defendants are responsible for the Satisfactory Completion of the SEP in accordance with the requirements of Appendix C of this Decree.

15.     With regard to the SEP, Defendants certify the truth and accuracy of each of the following:

a.     that all cost information provided to EPA by Defendants in connection with EPA's preliminary review of the SEP is complete and accurate and that Defendants estimate that the cost to implement the SEP is $500,000 in Eligible SEP Costs, as defined in Appendix C.

b.     that, as of the date of executing this Decree, Defendants are not required to perform or develop the SEP by any federal, state, or local law or regulation and are not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     that the SEP is not a project that Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.     that neither Defendant has received or will receive credit for the SEP in any other enforcement action;

e.    that neither Defendant will receive any reimbursement for any portion of the SEP from any other person; and

f.    that neither Defendant is a party to any open federal financial assistance transaction that is funding or could be used to fund the same activity as the SEP. Also that, to the best of each Defendant's knowledge and belief after reasonable inquiry, there is no such open federal financial transaction that is funding or could be used to fund the same activity as the SEP, nor has the same activity been described in an unsuccessful federal financial assistance transaction proposal submitted to EPA within two years of the date of this settlement (unless the project was barred from funding as statutorily ineligible). For the purposes of the certification required by this subparagraph, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee or other mechanism for providing federal financial assistance whose performance period has not yet expired.

16.    <u>SEP Reports</u>.

a.    Defendants shall submit to EPA the Phase I SEP Completion Report, the Phase II SEP Completion Report, and the Phase III SEP Completion Report, as required under Section IV of Appendix C, as well as the Annual SEP Reports and Final SEP Report, as required under Section V of Appendix C, in accordance with Section XV of this Consent Decree (Notices).

b.    After receiving the Phase III SEP Completion Report and additional requested information pursuant to Appendix C, if any, the United States shall notify Defendants whether or not Defendants have satisfied the phased SEP requirements of Appendix C. After receiving the Final SEP Report, EPA will notify Defendants whether or not Defendants have achieved Satisfactory Completion of the SEP under Appendix C. If Defendants have not

13

completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section IX of this Consent Decree (Stipulated Penalties).

17.     Disputes concerning the satisfactory performance of the SEP and the amount of Eligible SEP Costs may be resolved under Section XI of this Decree (Dispute Resolution).  No other disputes arising under this Section shall be subject to Dispute Resolution.

18.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 30.

19.     Any public statement, oral or written, in print, film, or other media, made by Defendants making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. Coltec Industries, Inc. et al., taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

20.     For federal income tax purposes, Defendants agree that they will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

21.     Defendants shall not use or rely on emissions reductions generated as a part of the SEP implemented pursuant to this Consent Decree, as described in Section VI of this Consent Decree (Supplemental Environmental Project), in any federal or state emissions averaging, banking, trading, netting, credit, or offset program; and Defendants shall not use such reductions in any other emissions compliance program at any time prior to the date five years after the date that the SCR achieves Fully Operational SCR Status, as that term is defined in Appendix C to this Consent Decree.  Nothing in this Consent Decree changes or modifies the responsibilities, obligations, or rights of Defendant FME under EPA and the Wisconsin Department of Natural Resources air permitting regulations and the requirements of the Beloit Facility Operating Air

14

Permit. This Consent Decree does not limit the Defendant from making modifications and emissions improvements to other test stands that are part of process P20/21 (other than the PA6B Engine Test Stand subject to this SEP, described in Appendix C) and taking credit for such lower emissions to increase the fuel usage limit for process P20/21 subject to the air permitting regulations of the Wisconsin Department of Natural Resources and EPA as they may otherwise apply.

22.     During the effective period of the current FME Beloit Facility Operating Permit, and any subsequent renewal of the Facility Operating Permit resulting from the November 12, 2009 air permit application, Defendant FME shall not modify or otherwise apply for any change to the maximum annual fuel usage limitations for Process P20/21 based on the $NO_x$ emissions reductions achieved for the Engine Test Stand under the SEP required by this Consent Decree.

### VII. CLAIMS RESOLUTION COSTS ARE UNALLOWABLE COSTS IN GOVERNMENT CONTRACTS

23.     <u>Covenant with Respect to Government Contracts.</u>

a.     The United States and Defendants hereby agree that Claims Resolution Costs are expressly unallowable costs pursuant to 48 C.F.R. §§ 31.201, 42.709-1, 52.242-3, and related provisions for the purposes of Federal Contracts. Accordingly, Defendants, on behalf of themselves, their subsidiaries, officers, directors, agents, employees, subcontractors and/or successors in interest, will not seek or claim these costs as an allowable direct or indirect cost in any Federal Contract.

b.     Defendants hereby certify that they have not sought reimbursement of any of Claims Resolution Costs in any completed or pending Federal Contract.

24.     <u>Covenant Not to Accept Reimbursement of Costs.</u> Neither Defendant will seek or accept from any person, including without limitation the United States Government, cash or in-

kind reimbursement, contribution, or indemnification for any or all Claims Resolution Costs; provided, however, this paragraph does not prohibit, address or limit agreements between Defendants respecting payment of Claims Resolution Costs.

### VIII. REPORTING REQUIREMENTS

25.     No later than January 31, 2013, and thereafter no later than January 31 of each subsequent year until termination of this Decree pursuant to Section XIX of this Decree (Termination) Defendants shall submit a report in writing to EPA for the preceding year (the "Reporting Period") that shall include:

a.     the status of Defendants' efforts to label the thirty-two model FM-MAN 48/60 Category 3 engines at issue in the Complaint, and listed in Table 1 in Paragraph 12 of this Decree, in the manner set forth in Paragraph 12, including a list of engines to which labels were affixed during the Reporting Period;

b.     the status of Defendants' efforts to label the eight additional model FM-MAN 48/60 Category 3 engines at issue in the Complaint, and listed in Table 2 in Paragraph 12 of this Decree, in the manner set forth in Paragraph 12, including a list of engines to which labels were affixed during the Reporting Period;

c.     the Annual SEP Reports required under Section V of Appendix C of this Consent Decree, if applicable for the Reporting Period.

26.     At the required time, Defendants shall submit the Phase I SEP Completion Report, Phase II SEP Completion Report, the Phase III SEP Completion Report, and the Final SEP Report, pursuant to Appendix C of this Decree.

27.     If either Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, such Defendant shall submit a report in writing to the

United States, notifying the United States of such violation and its likely duration, within 10 Days of the Day that such reporting Defendant first becomes aware of the violation. Such Defendant's report shall include an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, the reporting Defendant shall so state in the report. The reporting Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day that either Defendant becomes aware of the cause of the violation. Where both Defendants violate, or have reason to believe that they may violate, the same requirement of this Consent Decree, Defendants may submit a joint report in the manner otherwise specified under this Paragraph. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section X of this Consent Decree (Force Majeure).

28. Whenever any violation of this Consent Decree or any other event affecting Defendants' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall jointly notify the United States orally or by electronic transmission, as provided in Section XV (Notices), as soon as possible, but no later than 24 hours after either Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

29. All reports required pursuant to Paragraph 25 and 26 of this Consent Decree shall be submitted to EPA. All reports required pursuant to Paragraphs 27 and 28 of this Consent Decree shall be submitted to the United States. All reports shall be submitted to the persons designated in Section XV of this Consent Decree (Notices).

17

30.     Each report submitted by any Defendant or both Defendants under this Section

shall be signed by an official of the Defendant or Defendants acting as the submitting party and

include the following certification:

> I certify under penalty of law that this document and all attachments were
> prepared under my direction or supervision in accordance with a system
> designed to assure that qualified personnel properly gather and evaluate
> the information submitted. Based on my inquiry of the person or persons
> who manage the system, or those persons directly responsible for
> gathering the information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete. I am aware that there
> are significant penalties for submitting false information, including the
> possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where

compliance would be impractical.

31.     The reporting requirements of this Consent Decree do not relieve Defendants of

any reporting obligations required by the Clean Air Act or implementing regulations, or by any

other federal, state, or local law, regulation, permit, or other requirement.

32.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

IX. STIPULATED PENALTIES

33.     Defendants shall be liable for stipulated penalties to the United States for

violations of this Consent Decree as specified below, unless excused under Section X (Force

Majeure). A violation includes failing to perform any obligation required by the terms of this

Decree, including any work or schedule approved under this Decree, according to all applicable

requirements of this Decree and within the specified time schedules established by or approved

under this Decree.

34.     The following stipulated penalties shall apply as provided below:

a.     Late Payment of Civil Penalty. If Defendants fail to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

b.     Compliance Milestones. If Defendants fail to affix labels in the manner described in Paragraph 12 and required under Section V of this Decree (Compliance Requirements), Defendants shall pay a stipulated penalty of $500 per engine per Day of violation.

c.     Reporting Requirements. If Defendants fail to abide by the reporting requirements set forth in Paragraph 25 of Section VIII of this Decree (Reporting Requirements), Defendants shall pay the following stipulated penalties for each Day for which they fail to meet the requisite reporting requirements:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $ 100 | 1st through 29th Day |
| $ 250 | 30th through 59th Day |
| $ 500 | 60th Day and beyond |

d.     SEP Compliance.

i.     If Defendants fail to: (1) perform the activities required by Phase I, Phase II, or Phase III of the SEP, in accordance with Appendix C of this Consent Decree; (2) submit any SEP Completion Report for any corresponding phase of the SEP or submit the Final SEP Report within the time frames established under Appendix C and as set forth in Paragraph 26 Section VIII of this Decree (Reporting Requirements); (3) operate the SCR for the minimum time period required by Appendix C of this Consent Decree, or (4) otherwise meet the requirements set forth in Section VI of Appendix C ("Satisfactory Completion Requirements") of

this Consent Decree, Defendants shall pay the following stipulated penalties for each Day for which they fail to meet any such requirement:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $ 200 | 1st through 29th Day |
| $ 400 | 30th through 59th Day |
| $ 600 | 60th Day and beyond |

      ii.    If Defendants fail to implement the SEP altogether, or halt or abandon work on the SEP, Defendants shall pay a stipulated penalty of $700,000, less any amount paid in stipulated penalties pursuant to the immediately preceding subparagraph d(i).

35.    Except as provided in subparagraph 34(d)(ii), stipulated penalties under this Section shall apply per Day and shall automatically begin to accrue on the first Day Defendants fail to satisfy any obligation or requirement of this Consent Decree and shall continue to accrue until the violation or deficiency is corrected. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

36.    Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

37.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Consent Decree.

38.    Stipulated penalties shall continue to accrue as provided in paragraph 34 during any Dispute Resolution, but need not be paid until the following:

      a.    if the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined by EPA to be owed, together with Interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      if the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owed, together with Interest, within 30 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      if any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined by EPA to be owed, together with Interest, within 30 Days of receiving the final appellate court decision.

39.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 8 of Section IV (Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

40.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for Interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date the United States sends a demand for payment of stipulated penalties under Paragraph 36 of this Consent Decree.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

41.     Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the Clean Air Act or its implementing regulations, Defendants shall be allowed a

21

credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

42.     Defendants shall not deduct stipulated penalties paid under this Section in calculating their respective federal income taxes.

## X. FORCE MAJEURE

43.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, or any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring, and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

44.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic transmission to the United States, as provided in Section XV (Notices), within 72 hours of when Defendants first knew that the event might cause a delay. Within seven Days thereafter, Defendants shall provide written notice, as provided in Section XV of this Consent Decree (Notices), to EPA that provides an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants'

rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by any Defendant, or Defendants' contractors knew or, through best efforts, should have known.

45.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

46.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

47.     If Defendants elect to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the

23

circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

that Defendants complied with the requirements of Paragraphs 43 and 44, above. If Defendants

carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the

affected obligation of this Consent Decree identified to EPA and the Court.

## XI. DISPUTE RESOLUTION

48.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute

under this Section shall preclude Defendants from raising any such issue as a defense to an

action by the United States to enforce any obligation of Defendants arising under this Decree.

49.     Informal Dispute Resolution. Disputes subject to Dispute Resolution under this

Consent Decree shall, in the first instance, be the subject of informal negotiations between the

Parties. The dispute shall be considered to have arisen when Defendants send the United States a

written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute and

shall include supporting documentation. The period of informal negotiations shall not exceed 30

Days from the date the dispute arises, unless that period is modified by written agreement. If the

Parties cannot resolve a dispute by informal negotiations, then the position advanced by the

United States shall be considered binding unless, within 30 Days after the conclusion of the

informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth

below.

50.     Formal Dispute Resolution. Defendants shall invoke formal dispute resolution

procedures, within the time period provided in the preceding Paragraph of this Consent Decree,

by serving on the United States a written Statement of Position regarding the matter in dispute.

The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendant.

51.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

52.    Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

53.    The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

54.    <u>Standard of Review</u>. Except as otherwise provided in this Consent Decree, in any dispute subject to judicial review under Paragraph 52, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree, that their position will

25

achieve compliance with the terms and conditions of this Consent Decree and the Act in an expeditious manner, and that implementation of their position will better further the objectives of this Consent Decree than would implementation of the United States' position. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

55.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 38. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

56.    The United States and its authorized representatives, including attorneys, contractors, and consultants, shall have the right to enter into any of either Defendant's facilities pertaining to the requirements imposed under this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.    monitor the progress of activities required under this Consent Decree;

      b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.    inspect engines, vessels, or equipment manufactured, or purchased by or on behalf of Defendants;

      d.    require emissions testing;

     e.     obtain documentary evidence, including photographs and similar data; and

     f.     assess Defendants' compliance with this Consent Decree.

57.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their respective contractors and agents to retain all non-identical copies of all documents, records, data or other information (including documents, records, data or other information in electronic form) that relate to Defendants' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

58.     Defendants may assert that certain documents, records, or other information requested by EPA pursuant to the preceding Paragraph is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

59.     Defendants may also assert that information required to be provided under this Section is protected as confidential business information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, the asserting Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

60.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal, state, or local laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal, state, or local laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS

61.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

62.     The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree. The United States reserves, and this Consent Decree shall not be construed to limit, the right of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 61.

63.     In any subsequent administrative or judicial proceeding initiated by the United States against any Defendant for injunctive relief, civil penalties, other appropriate relief, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 61 of this Section.

64.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining compliance with all applicable federal, state, and local laws, regulations, and

permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, state, or local laws, regulations, or permits. This Consent Decree does not resolve criminal liability, if any, that any person or entity might have for violations of the Act or any other law.

65.     This Consent Decree does not limit or affect the rights of Defendants against each other or against any third parties not a party to this Consent Decree, nor does it limit the rights of third parties not party to this Consent Decree, against Defendants, except as otherwise provided by law.

66.     This Consent Decree does not limit or affect the rights of the United States against any third parties not a party to this Consent Decree.

67.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not a party to this Consent Decree.

## XIV. COSTS

68.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree, including any action to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

XV. NOTICES

69.     Unless otherwise specified herein, whenever notifications, submissions or

communications are required by this Consent Decree they shall be made in writing and addressed

as follows:

To the United States:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-09942

(However, any notifications permitted under this Decree to be made by oral correspondence or
electronic transmission shall be directed to: Telephone (202) 616-8907; or E-mail
robyn.hanson@usdoj.gov)

And

Director, Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W. (2242A)
Washington, D.C. 20460

(However, any notifications permitted under this Decree to be made by oral correspondence or
electronic transmission shall be directed to: Telephone, (202) 510-1011; or E-mail
adair.jocelyn@epa.gov)

To EPA:
Director, Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W. (2242A)
Washington, D.C. 20460

(However, any notifications permitted under this Decree to be made by oral correspondence or
electronic transmission shall be directed to: Telephone, (202) 510-1011; or E-mail
adair.jocelyn@epa.gov)

To Defendants:

To Defendant Coltec Industries Inc.:

Robert S. McLean
Vice President, Legal
EnPro Industries Inc.
5605 Carnegie Boulevard, Suite 500
Charlotte, NC  28209-4674
Robert.McLean@EnProIndustries.com


To Defendant National Steel and Shipbuilding Company:

Matthew S. Luxton
Vice President and General Counsel
GD NASSCO
2798 East Harbor Drive
San Diego, CA  92113
mluxton@nassco.com


70.     Any party to the Consent Decree may change its designated notice recipient or

notice address by sending written notice to the other Parties setting forth the new information.

71.     Unless otherwise provided herein, reports, submissions, notifications to, or

communications with the United States or Defendants shall be deemed submitted on the date

they are sent by certified or registered mail, return receipt requested.

## XVI. EFFECTIVE DATE

72.     The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants

hereby agree that each shall be bound to perform duties scheduled to occur prior to the Effective

Date.  In the event the United States withdraws or withholds consent to this Consent Decree

31

before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII. RETENTION OF JURISDICTION

73.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

74.    The terms of this Consent Decree, including its attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

75.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 54, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX. TERMINATION

76.    After Defendants have completed the requirements of Section V (Compliance Requirements) of this Decree, have complied with all other requirements of this Consent Decree, including those relating to the SEP required by Section VI of this Consent Decree (Supplemental Environmental Project), and have paid the civil penalty and any accrued stipulated penalties as required by Sections IV (Civil Penalty) and IX (Stipulated Penalties) of this Consent Decree,

respectively, Defendants may, at any time after five years from the Effective Date of this Consent Decree, serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

77.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. The period of time for informal discussion of termination shall not exceed 60 Days, unless agreed by the Parties. If the United States agrees that the Decree may be terminated, the United States shall submit, for the Court's approval, a joint motion to terminate the Decree.

78.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section XI (Dispute Resolution) of this Decree. However, Defendants shall not invoke Dispute Resolution concerning any dispute regarding termination under Section XI (Dispute Resolution) until 120 Days after service of its Request for Termination.

## XX. PUBLIC PARTICIPATION

79.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.

80.     Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge

any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

81.     Each undersigned representative of Defendants, the United States Environmental Protection Agency, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

82.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII. INTEGRATION

83.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII. FINAL JUDGMENT

84.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

## XXIV. APPENDICES

85.    The following appendices are attached to and incorporated into this Decree:

"Appendix A" is "Format of Labels for Engines Listed in Table 1 of Paragraph 12;"

"Appendix B" is "Format of Labels for Engines Listed in Table 2 of Paragraph 12;"

"Appendix C" is the "Supplemental Environmental Project."

SO ORDERED AND APPROVED in accordance with the foregoing this 23rd day of

May 2012

THE HONORABLE AMY B. JACKSON
United States District Judge
U.S. District Court for the District of Columbia

35

Signature Page to Consent Decree in: *U.S. v. Coltec Industries Inc., et al.*

**FOR PLAINTIFF, UNITED STATES OF AMERICA:**

Dated: 3/16/12

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Dated: 3/19/12

ROBYN E. HANSON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
(202) 616-8907
(202) 616-6584 (fax)

36

**Signature Page to Consent Decree in:** *U.S. v. Coltec Industries Inc., et al.*

Dated: 3/22/12

PAMELA MAZAKAS
Acting Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

Dated: 3/21/12

PHILLIP A. BROOKS
Director, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

Dated: 3/15/12

JOCELYN A. ADAIR
Attorney
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

37

**Signature Page to Consent Decree in:** *U.S. v. Coltec Industries Inc., et al.*

**FOR DEFENDANT COLTEC INDUSTRIES, INC.:**

_____     Dated:  _1/31/12_

Robert S. McLean
Vice President, Legal
EnPro Industries Inc.

38

**Signature Page to Consent Decree in:** *U.S. v. Coltec Industries Inc., et al.*

**FOR DEFENDANT NATIONAL STEEL AND SHIPBUILDING COMPANY:**

Dated: 1/31/2012

Matthew S. Luxton
Vice President and General Counsel
GD NASSCO

**Appendix A to Consent Decree in:**
*U.S. v. Coltec Industries Inc., et al.* **- Civil Action No. 1:10-cv-01659-ABJ**

## FORMAT OF LABELS FOR ENGINES LISTED IN TABLE 1 OF PARAGRAPH 12

MARINE ENGINE EMISSION CONTROL INFORMATION
(FME LOGO)            (MAN LOGO)
        MODEL YEAR [Insert Applicable Model Year, e.g., 2004]
        108.5 LITERS PER CYLINDER
        FM-MAN MODEL 48/60

PURSUANT TO THE CONSENT DECREE ENTERED IN United States v. Coltec Industries, Inc. et al., Civil Action No. 1:10-cv-01659-ABJ, THIS ENGINE COMPLIES WITH U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS THAT APPLY TO MARINE COMPRESSION IGNITION ENGINES.

USEFUL LIFE OF ENGINE:  30,000 HOURS
THIS ENGINE COMPLIES WITH U.S. EPA 40 CFR
PART 94 NOx EMISSION STANDARD OF 12.9 g/Kw-hr

TUNE UP SPECIFICATIONS:
FUEL INJECTION NOZZLE POP PRESSURE SET TO 350 BAR
EXHAUST VALVE LASH SET TO 0.9MM +0.1MM
INTAKE VALVE LASH SET TO 0.2MM +/- 0.05MM

THIS ENGINE MUST BE OPERATED ONLY WITH DISTILLATE DIESEL FUEL.
MODIFYING THE ENGINE TO OPERATE ON RESIDUAL FUEL
MAY BE A VIOLATION OF FEDERAL LAW SUBJECT TO CIVIL PENALTIES.

ENGINE APPLICATION:  MARINE DIESEL ELECTRIC DRIVE

**Appendix B to Consent Decree in:**
*U.S. v. Coltec Industries Inc., et al.* - **Civil Action No. 1:10-cv-01659-ABJ**

## FORMAT OF LABELS FOR ENGINES LISTED IN TABLE 2 OF PARAGRAPH 12

MARINE ENGINE EMISSION CONTROL INFORMATION
[Insert FME LOGO]                    [Insert MAN LOGO]
    MODEL YEAR [Insert Applicable Model Year, e.g., 2008 or 2009]
    108.5 LITERS PER CYLINDER
    FM-MAN MODEL 48/60
    ENGINE FAMILY NAME [Insert Applicable Engine Family Name, either:
8FBMM108.COC (for Model Year 2008) or 9FBMN108.COC (for Model Year 2009)]

THIS ENGINE COMPLIES WITH U.S. ENVIRONMENTAL PROTECTION AGENCY
REGULATIONS THAT APPLY TO MARINE COMPRESSION IGNITION ENGINES. THIS
LABEL IS APPLIED PURSUANT TO THE CONSENT DECREE ENTERED IN United States
v. Coltec Industries, Inc. et al., Civil Action No. 1:10-cv-01659-ABJ.

USEFUL LIFE OF ENGINE: 30,000 HOURS
THIS ENGINE COMPLIES WITH U.S. EPA 40 CFR
PART 94 NOx EMISSION STANDARD OF 12.9 g/Kw-hr

TUNE UP SPECIFICATIONS:
FUEL INJECTION NOZZLE POP PRESSURE SET TO 350 BAR
EXHAUST VALVE LASH SET TO 0.9MM +0.1MM
INTAKE VALVE LASH SET TO 0.2MM +/- 0.05MM

THIS ENGINE IS CERTIFIED FOR OPERATION ONLY WITH
DISTILLATE DIESEL FUEL. MODIFYING THE ENGINE TO
OPERATE ON RESIDUAL FUEL MAY BE A VIOLATION
OF FEDERAL LAW SUBJECT TO CIVIL PENALTIES.

ENGINE APPLICATION: MARINE DIESEL ELECTRIC DRIVE

Appendix C to Consent Decree in:

*U.S. v. Coltec Industries Inc., et al.* - Civil Action No. 1:10-cv-01659-ABJ

## SUPPLEMENTAL ENVIRONMENTAL PROJECT

### I.    Project Overview and Purpose

1.    Defendants shall implement and complete a Supplemental Environmental Project ("SEP") in accordance with the terms, criteria, procedures, work plans, and time schedules set forth herein.

2.    This SEP involves the addition of a nitrogen oxide ("$NO_x$") control system capable of reducing $NO_x$ levels to the exhaust stack connected to one test stand at FME's Beloit, Wisconsin, engine manufacturing facility ("FME's Beloit Facility") for the testing of Colt-Pielstick PA6B STC ("PA6B") marine diesel engines that is located at stack S21F at process P20/21 (OP Building) under Wisconsin Department of Natural Resources permit number 154002970-P10  (the "Engine Test Stand").  PA6B engines are large propulsion engines manufactured for the Lockheed Martin Littoral Combat Ship (LCS) program and are sold by FME for use in U.S. Navy ships.  Defendants estimate the costs of such controls at $500,000.

3.    FME is, at present, the only U.S. company that manufactures marine diesel engines of such size and type.  FME has represented to the United States that the proposed controls for the Engine Test Stand at FME's Beloit Facility are not required by any federal, state or local law or regulation.  Due to the unique size of the PA6B engines and the nature of the Engine Test Stand, custom-designed and custom engineered air pollution control technologies specific to the configurations of the Engine Test Stand are necessary to implement this project. The exact nature of the design, engineering, and operation of the air pollution control technologies shall be developed and satisfactorily explained by Defendants in the three phases of SEP Completion Reports, required under Section IV of this Appendix.

4.    Defendants shall install a Selective Catalytic Reduction ("SCR") system on the Engine Test Stand for the emission reduction of $NO_x$.  As of the date of signing this Consent Decree, Defendants represent that they estimate that the air pollution controls installed pursuant to the SEP will reduce $NO_x$ emissions by at least 85% as demonstrated by the procedure described in Appendix C, Paragraph 11.b.vi.

5.    The purpose of the SEP is to secure significant environmental and public health protection and improvements that are not otherwise required by law.

### II.    Description of the Engine Test Stand Before SEP Implementation

6.    Within 30 Days of the Effective Date of this Consent Decree, and pursuant to the procedures set forth in Section XV of this Decree (Notices), Defendants shall submit to EPA the following information concerning the Engine Test Stand where the SCR required by the SEP under this Decree will be installed and operated:

a.  a drawing and full description of the Engine Test Stand and associated stack as of the Effective Date of the Consent Decree, including: the size, design, and operating capacity;

b.  the frequency of use or operation of the Engine Test Stand for the last three (3) years and the anticipated future frequency of use or operation of the Engine Test Stand due to known pending contracts for the production of PA6B engines;

c.  the actual annual amount of fuel usage for Process P20/21 for the immediately preceding three calendar years prior to the Effective Date;

d.  a description of any emission control technology or devices existing on the Engine Test Stand.

## III.  Eligible SEP Costs

7.  Eligible SEP Costs are only those that are consistent with performing the SEP as described in this Appendix and required under this Decree. Only Eligible SEP Costs may be accounted for in any particular phase of the SEP. For purposes of this Consent Decree, Eligible SEP Costs under any phase of the SEP exclude overhead, administrative expenses, legal fees, and costs that Defendants incur due to contractor oversight or for other employee time or salary attributable to the SEP; provided, however, that Eligible SEP Costs may include certain costs generated by in-house personnel who are regularly employed by FME and who, due to their unique site-specific understanding of FME's Beloit Facility, are required to actively and concurrently work with outside consultants and hold the following job titles: Facilities and Plant Engineering; Product Engineering; Environmental, Health, and Safety; Maintenance Facility Electrician; and Facilities Maintenance Mechanic. In any event, the recorded hourly cost of such FME employees who work on the SEP shall account for no more than 15% of the total Eligible SEP Costs; any amount in excess are ineligible SEP costs. FME shall use its customary time-keeping system to report the amount of time that employees work on the SEP and shall submit, as part of Defendants' Annual SEP Reports and Phase I SEP, Phase II SEP, or Phase III SEP Completion Reports, the cost of any recorded employee time that Defendants deem qualify as an Eligible SEP Cost.

## IV.  Phased Implementation of the SEP

8.  The SEP shall be implemented in three phases to bring the project to "Fully Operational SCR Status." The SEP achieves "Fully Operational SCR Status" on the date that the final emissions testing occurs, as specified under the requirements of the Phase III SEP Completion Report described in Paragraph 11 of this Appendix.

9.  Phase I SEP. Phase I of the SEP ("Phase I SEP") shall consist of preliminary project design and contractor selection. Phase I SEP begins on the Effective Date of this Decree and lasts for no more than twelve (12) months after the Effective Date.

a.  Phase I SEP shall include:

     i.   the preliminary scope of and engineering design for the SEP;

     ii.  an evaluation of the projected environmental and public health benefits of the SEP, including but not limited to estimated levels of NOx emissions reductions;

     iii.  project bid specification and development;

     iv.  contractor selection for implementation of the SEP.

  b.   No later than the deadline for completion of Phase I SEP provided for under this Paragraph, Defendants shall submit to EPA a Phase I SEP Completion Report for EPA review and approval, as set forth in Paragraph 12 of this Appendix, before proceeding with Phase II SEP, described in Paragraph 10 of this Appendix. Defendants shall submit the Phase I SEP Completion Report to EPA pursuant to the procedures set forth in Section XV of this Decree (Notices) and such report shall contain the following information:

     i.   a detailed description of the preliminary scope of and engineering design for the SEP;

     ii.  information on the projected environmental and public health benefits of the SEP, including but not limited to estimated levels of NOx emissions reductions;

     iii.  a summary of bid specification and development efforts, including information about requests for proposals;

     iv.  the selected contractor for implementation of the SEP;

     v.   an accounting of all design and engineering costs to date that qualify as Eligible SEP Costs;

     vi.  a detailed description of any problems encountered during Phase I SEP and solutions thereto;

     vii.  a detailed description of any anticipated problems for Phase II SEP and measures taken to address such anticipated problems;

     viii. the estimated dates for completing production and beginning installation of the SCR.

10.    __Phase II SEP__. Phase II of the SEP ("Phase II SEP") shall consist of detailed engineering and production measures required for implementing the SEP. Phase II SEP begins on the date of EPA's approval of the Phase I SEP Completion Report and lasts for no more than twelve (12) months.

a.   Phase II SEP shall include:

    i.   a detailed engineering and design process for the SEP, inclusive of finalizing site-specific SCR control design and drawings;

    ii.   procurement efforts and the production process for the SCR, including the actual period of production of the SCR;

b.   No later than the deadline for completion of Phase II SEP provided for under this Paragraph, Defendants shall submit to EPA a Phase II SEP Completion Report for review and EPA approval, as set forth in Paragraph 12 of this Appendix, before proceeding with Phase III SEP, described in Paragraph 11 of this Appendix. Defendants shall submit the Phase II SEP Completion Report to EPA pursuant to the procedures set forth in Section XV of this Decree (Notices) and such report shall contain the following information:

    i.   a reference copy of the EPA-approved Phase I SEP Completion Report;

    ii.   a detailed description of the engineering and design for the SEP, inclusive of site-specific SCR control design and final drawings;

    iii.   an accounting of engineering and SCR production costs that qualify as Eligible SEP Costs;

    iv.   a description of the procurement efforts and the production process for the SCR, including the actual production dates for the SCR;

    v.   a detailed description of any problems encountered during Phase II SEP and solutions thereto;

    vi.   a detailed description of any anticipated problems for Phase III SEP and measures taken to address such anticipated problems;

    vii.   an overview of the expected SCR installation process and an estimated date for completing installation of the SCR;

    viii.   an estimated date for implementing the SEP and bringing the SCR to Fully Operational SCR Status.

11.   The Phase III SEP. Phase III of the SEP ("Phase III SEP") shall consist of the final phase of the SEP and include all remaining efforts to bring the SCR to Fully Operational SCR Status. Phase III SEP shall begin on the date of EPA's approval of the Phase II SEP Completion Report and last for no more than six (6) months.

a.   Phase III SEP shall include:

    i.   the SCR installation process on the Beloit Facility's Engine Test Stand;

  ii. start-up testing or troubleshooting of the SCR; provided, however, that if no PA6B engine is available for testing between the date of SCR installation and the end date for Phase III SEP, Defendants may demonstrate such engine unavailability to EPA and request an extension to the deadline for Phase III SEP for good cause shown, as provided under Paragraph 14;

  iii. final $NO_x$ emissions testing, calculating the emissions at the Engine Test Stand with an installed PA6B engine (or an engine of similar engineering design to the PA6B engine that is compatible with the SCR and the Engine Test Stand with only minor modifications thereto) and the SCR disabled and enabled to identify the percent reduction of $NO_x$ attributable to the operation of the SCR, all other factors being equal; provided, however, that if no PA6B engine is available for testing between the date of SCR installation and the end date for Phase III SEP, Defendants may demonstrate such engine unavailability to EPA and request an extension to the deadline for the Phase III SEP for good cause shown, as provided under Paragraph 14;

  iv. an analysis of the environmental and public health benefits resulting from implementation of the SEP (with quantification of the benefits and pollution reductions, if feasible);

  v. the undertaking of any additional measures deemed necessary to achieve implementation of the SEP and bring the SCR to Fully Operational SCR Status.

 b. No later than the deadline for completion of Phase III SEP provided for under this Paragraph Defendants shall submit to EPA a Phase III SEP Completion Report for review and EPA approval, as set forth in Paragraph 12 of this Appendix. Defendants shall submit the Phase III SEP Completion Report to EPA pursuant to the procedures set forth in Section XV of this Decree (Notices) and such report shall contain the following information:

  i. reference copies of the EPA-approved Phase I and Phase II SEP Completion Reports;

  ii. a detailed description of any problems encountered in completing Phase III SEP and solutions thereto;

  iii. a description of the SCR installation process on the Beloit Facility's Engine Test Stand and date that such installation was completed, including a description of any problems encountered in completing installation of the SCR and solutions thereto;

  iv. the results of start-up testing or troubleshooting of the SCR; provided, however, that if no PA6B engine is available for testing between the

date of SCR installation and the due date for the Phase III SEP Completion Report, Defendants may state such, provide EPA with the status of any pending or approved Phase III SEP extension request, and provide an estimated submission date for reporting the results of start-up testing or troubleshooting of the SCR;

v.   the date that the final emissions testing actually occurred, which is also the date the SCR achieves Fully Operational Status; provided, however, that if no PA6B engine is available for testing between the date of SCR installation and the due date for the Phase III SEP Completion Report, Defendants may state such, report that final emissions testing has not yet occurred, provide EPA with the status of any pending or approved Phase III SEP extension request, and provide an estimated date for final emissions testing of the SCR;

vi.   the results of final $NO_x$ emissions testing, quantifying the emissions at the Engine Test Stand with the SCR disabled and enabled to identify the percent reduction of $NO_x$ attributable to the operation of the SCR, all other factors being equal; provided, however, that if no PA6B engine is available for testing between the date of SCR installation and the due date for the Phase III SEP Completion Report, Defendants may state such, report that final emissions testing has not yet occurred, and provide EPA with the status of any pending or approved Phase III extension request;

vii.   a description of the environmental and public health benefits resulting from implementation of the SEP (with quantification of the benefits and pollution reductions, if feasible);

viii.   an itemized list of all SEP costs that Defendants have classified as Eligible SEP Costs, organized by category (*e.g.* design and engineering costs, eligible employee costs, material costs, production and installation costs);

ix.   certification that the SEP has been designed, produced, and installed on the Engine Test Stand pursuant to the provisions of this Consent Decree.

12.   <u>EPA Approval of Phased Completion Reports.</u>

a.   Upon receipt of the Phase I SEP Completion Report, the Phase II SEP Completion Report, and the Phase III SEP Completion Report, EPA will review the submitted report and notify Defendants in writing, pursuant to the procedures set forth in Section XV of this Decree (Notices), whether EPA approves the submitted report. EPA may disapprove the submitted report if EPA determines that the submitted report does not achieve part or

all of the requirements for implementation of the respective phase of the SEP, as set forth in this Appendix.

    b.    If EPA disapproves the submitted Phase I SEP Completion Report, Phase II SEP Completion Report, or Phase III SEP Completion Report, EPA will specify the reason(s) that EPA rejects the report as submitted. Defendants shall have 30 Days to submit a revised version of the SEP Completion Report at issue.

13.    EPA may, in its sole discretion, require information in addition to that described in Paragraphs 9, 10, or 11, in order to evaluate Defendants' Phase I SEP Completion Report, Phase II SEP Completion Report, or Phase III SEP Completion Report, respectively.

14.    EPA may extend any due date for completion of any phase of SEP upon Defendants written request to EPA for good cause shown pursuant to the procedures set forth in Section XV of this Decree (Notices). Informal dispute resolution under Section XI (Dispute Resolution) is not available with respect to EPA's finding of good cause shown.

## V.    Annual SEP Reports and Final SEP Report

15.    Beginning with the calendar year that Defendants submit the Phase III SEP Completion Report and continuing on an annual basis until the calendar year when Defendants achieve Satisfactory Completion of the SEP, as described in Section VI of this Appendix, which is achieved on the date that EPA notifies Defendants of Satisfactory Completion pursuant to Paragraph 16 of this Consent Decree, Defendants shall submit to EPA written Annual SEP Reports regarding performance of the SEP during the preceding calendar year. Annual SEP Reports shall include a description of the operation of the SCR certifying its operation during the entire duration of the operation of the Engine Test Stand in accordance with the requirements of the SEP, or, alternatively, certifying operation of modified and improved emissions control technologies permitted under Paragraph 17(d) of this Appendix. Should Defendants fail to operate or otherwise cease operation of the SCR during the operation of the Engine Test Stand, such actions shall be identified and explained in the respective Annual SEP Report. Alternatively, should Defendants modify or replace the SCR as permitted under Paragraph 17(d) of this Appendix, such actions shall be identified and explained in the respective Annual SEP Report and any operation or failure to operate any such modifications or replacements to the SCR should also be identified and explained.

16.    <u>Final SEP Report</u>. Upon Defendants' determination that they have achieved Satisfactory Completion of the SEP in accordance with the requirements of this Consent Decree, as set forth in Section VI of this Appendix, Defendants shall submit to EPA, pursuant to the procedures set forth in Section XV of this Decree (Notices), a written Final SEP Report, pursuant to Paragraph 16 of this Consent Decree, demonstrating the achievement of all elements of Satisfactory Completion. EPA will review the Final SEP Report and notify Defendants whether or not EPA agrees with Defendants' determination, pursuant to Paragraph 16 of this Consent Decree.

## VI.    Satisfactory Completion of the SEP

17.    Defendants are responsible for the Satisfactory Completion of the SEP in accordance with the requirements of this Consent Decree. "Satisfactory Completion" of the SEP means that Defendants shall:

a.    design, construct, and install the add-on air pollution controls to the Engine Test Stand as set forth in the three phases of the SEP and as submitted to EPA in the Phase I SEP Completion Report, the Phase II SEP Completion Report, and the Phase III SEP Completion Report;

b.    ensure that the air pollution control measures required by the SEP achieve Fully Operational SCR Status as provided for by the implementation of each phase of the SEP;

c.    demonstrate that the air pollution control measures functionally reduce $NO_x$ emissions by a minimum of 85% at the Engine Test Stand as demonstrated by the procedure described in Appendix C, Paragraph 11.b.vi; and

d.    operate the SCR in accordance with this Appendix from the date the SCR achieves Fully Operational SCR Status for either a period of five years or, alternatively, for the entire duration of the operation of the Engine Test Stand provided the test stand continues to be needed and used to test PA6B engines (or engines of similar engineering design to the PA6B engines that are compatible with the SCR and the Engine Test Stand with only minor modifications thereto) whichever period of operational time is less.

i.    The operation of the SCR on the Engine Test Stand in accordance with this Appendix does not preclude Defendants from making changes to or replacing components of the SCR to accommodate technological advances and achieve improved emissions controls resulting in equal or greater emissions reductions than those achieved by the SCR required under this Appendix, including but not limited to, modifications for improved or more efficient engine testing equipment or methods, additional or improved emissions control equipment or technology, improved energy efficiency, or improved safety; provided, however, that the same limitations regarding Defendants' use of any emissions reductions generated as a result of the SCR required under this SEP, as set forth in this Consent Decree, shall equally apply to any replaced or improved emission control technologies or other permitted modifications to the SCR under this subparagraph.

ii.    Should Defendants determine that making changes to or replacing components of the SCR in accordance with subparagraph (d)(i) of this Appendix, immediately above, is warranted, Defendants shall notify

EPA of the full project description and preliminary design for such modification(s), pursuant to the procedures set forth in Section XV of this Decree (Notices), no later than the date that Defendants send out a solicitation for potential contractors for implementing such modification(s).  EPA will notify Defendants within 60 Days of receipt of such notification whether EPA agrees that such is a permissible modification under subparagraph (d)(i) of this Appendix.